## No. 19,815.

### Mary A. Martin *v*. Public Employees' Retirement Board.
(371 P. [2d] 266)

Decided May 7, 1962.

Mr. FRED M. WINNER, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN E. BUSH, Special Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

ODBERT MARTIN began working for the Colorado State Highway Department in May 1942 and continued this employment without interruption until June 6, 1957. For some 14 years and 7 months of his employment with the state, Martin was an active member of the Public Employees' Retirement Association, and as such made regular, periodic monetary contributions to the retirement fund during this entire period of time, his contribution being in the form of a deduction from his monthly salary.

On July 6, 1957, Martin, who was not eligible to retire for superannuation, was retired for reasons of physical disability under the provisions of C.R.S. '53, 111-1-15, it having been determined that he had Parkinson's Disease which totally disabled him from performing his regular work duties with the state. The disability annuity was payable at the rate of $178.17 per month, which sum was regularly paid Martin until his death on June 10, 1958.

Surviving the death of Odbert Martin was his wife, Mary A. Martin, who will hereinafter be referred to as the claimant. On July 7, 1958, claimant made a formal request for the survival benefits provided by C.R.S. '53, 111-8-1, et. seq. (1957 Cum. Supp.). More specifically, she based her claim for survivor's benefits on 111-8-4, contending that she met all of the requirements of that section and that she was accordingly entitled to the benefits created thereby.

The Public Employees' Retirement Board acting on the advice of the Attorney General denied her claim on the ground that she did not qualify or meet the requirements prescribed by the statute. The Board specifically found that as of the date of his death Martin was not an "active member of the Public Employees' Retirement Association," and further that Martin had not rendered two years of "credited service immediately preceding his death," as required by C.R.S. '53, 111-8-2 and 4 (1957 Cum. Supp.), respectively. It was the position of the Board that the survivor's benefits created by C.R.S. '53, 111-8-1, et. seq., (1957 Cum. Supp.) were for the benefit of certain designated survivors of state employees who as of the date of their death were not yet eligible for superannuation benefits and as of that date were "active members" of the association making contributions to the retirement fund, and that such benefits were limited to survivors of those who, among other things, had been making such contributions for the two years immediately preceding death. Accordingly, the Board found that the requirements of the statute were not met, Martin being a "disability retiree," and thereupon denied the claim.

Being dissatisfied with the action of the Board claimant sought judicial review thereof, in the nature of certiorari under Rule 106, R.C.P. Colo. The trial court held that the Board had correctly interpreted and applied the pertinent statutes and entered judgment sustaining the Board's disallowance of the claim. The claimant is here by writ of error seeking reversal of the judgment.

 Claimant contends that historically pension statutes have as a matter of sound public policy been "liberally" construed with the view of promoting the laudable and beneficent objects of the lawmaking body. However, as was said in *Board of Trustees of the Policemen's Pension Fund of the City of Pueblo v. Starasinich,* 128 Colo. 556, 264 P. (2d) 1033: "To determine the status of petitioner on the question presented, we must accept

the law as enacted and not undertake to read into the statutes or ordinances requirements or conditions not imposed by the Legislature and thus change the law by judicial construction." To like effect is *Pueblo Fireman's Pension Board v. Hubersberger,* 132 Colo. 344, 288 P. (2d) 352. The converse of this basic proposition is equally true and, accordingly, the judiciary should not undertake to read "out" of a statute a requirement in fact imposed by the Legislature.

The legislative history of the "Public Employees' Retirement Systems" may shed some light on the present controversy and will place it in proper perspective. In 1931 The General Assembly enacted the first legislation relating to the pensioning of certain classes of state employees after retirement from office, and it provided benefits for a superannuated employee during his lifetime only, with no provision for any benefit for a survivor of said employee. See C.R.S. '53, 111-1-11. In 1945 the General Assembly adopted an act which gave to the superannuated employee optional forms of annuities which made possible certain benefits to the survivors of deceased superannuated employees. See C.R.S. '53, 111-1-12. C.R.S. '53, 111-1-25 enacted in 1953 further extended such benefits by providing that the surviving wife of an employee who was eligible to retire but had not done so, was entitled to certain benefits upon the death of such employee. In 1957 the General Assembly for the first time created benefits for the survivors of those state employees who were not eligible for retirement. C.R.S. '53, 111-8-1, et seq., (1957 Cum. Supp.) In 1961 the General Assembly for the first time took cognizance of the survivors of deceased disability retirees by amending C.R.S. '53, 111-1-12 to provide that a state employee retired for mental or physical disability could elect to receive his disability annuity in the form of any one of the several options already provided for those retired for superannuation. Also, this amendment in so

many words declared that effective July 1, 1961, all those making application for retirement for superannuation or disability should not be eligible to participate in the survivor's benefits provided in C.R.S. '53, 111-8-1, et. seq., (1957 Cum. Supp.).

Proceeding then to a consideration of our immediate problem, we conclude that although C.R.S. '53, 111-8-1, et seq., (1957 Cum. Supp.) does not in so many words either include or exclude the survivors of disability retirees, nevertheless the requirements for one who would qualify for such benefits are such as to clearly indicate that it was not the intention of the General Assembly to extend these newly created benefits to the survivors of disability retirees. C.R.S. '53, 111-8-2 (1957 Cum. Supp.) provides in part that: "Upon the death of an *active member* of the public employees' retirement association . . . certain dependents of said deceased member shall receive annuities subject to the conditions hereinafter set forth in this article." (Emphasis supplied.) One such condition is found in C.R.S. '53, 111-8-4 (1957 Cum. Supp.), which reads in part as follows: "Subject to the conditions that the deceased member has fifteen or more years of *credited service, of which at least two such years of service were rendered immediately preceding his death,* his widow shall receive a survivor annuity equal to . . . " (Emphasis supplied.)

The precise question posed is whether Martin at the date of his death was both an "active member" of the association, and had rendered at least two years of "credited service" immediately prior to his death. If he was not an "active member" of the association at the date of his death, or if he had not rendered two years of credited service *immediately prior* to his death, then his widow does not qualify for the survivor benefits provided by this statute.

Prior to June 6, 1957, Martin was an "active member" of the retirement association, making periodic contributions to the retirement fund and as of that date had

132

nearly 15 years of "credited service." On that date, though not eligible for superannuation benefits, he was retired because of physical disability and thereafter ceased being an "active member" of the association and became a "disability retiree." As such he was entitled to a disability annuity, which he received for about one year and from which no deductions for the retirement fund were made. As of June 6, 1957, he ceased making any financial contribution to the retirement fund, and accordingly his period of "credited service" also came to an end. This being the case the claimant has failed to meet the requirements and conditions imposed by the General Assembly, and the Board under the circumstances did not err in denying her claim.

The judgment is affirmed.

MR. JUSTICE HALL concurs in the result.